# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH CONWAY, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. 1:CV-03-1800 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| BELL HEARING AID CENTERS, INC. | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM AND ORDER

Presently before the Court is Defendant's Motion for Summary Judgment (Doc. No. 13) and all responsive pleadings thereto. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendant's motion for summary judgment will be granted.

### I.   Background[1]

Keith Conway ("Plaintiff") is an African-American male with work experience in customer service and sales. Bell Hearing Aid Centers, Inc. ("Defendant") is a Miracle Ear franchisee that sells hearing aids and related services throughout Pennsylvania. At all times relevant to this suit, John Beall served as CEO of Defendant, and his daughter, Julia Beall McKelvey, served as President. Beginning March 28, 2001, Plaintiff worked as an at will

---

[1] The following are undisputed facts. (Doc. No. 15.) As Plaintiff failed to file a statement of facts in opposition to Defendant's statement of undisputed material facts, Defendant's statement of facts are deemed to be admitted as true unless directly contested by Plaintiff's proffered evidence in opposition. See Local Rule 56.1 ("The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried").

employee for Defendant as a Patient Services Manager ("Services Manager"), fitting and servicing hearing aids, conducting check-ups, and performing general customer service. Defendant employed only one other Services Manager, Spencer Miller, a white male. Defendant divided its locations into two groups, the Eastern Territory and the Western Territory, and stationed one Services Manager in each area. Plaintiff was stationed in Defendant's Eastern Territory, located primarily in central Pennsylvania.

Plaintiff received a 5% commission on any sales of hearing aids. Sales were not a requirement of the Services Manager position and Plaintiff only sold four hearing aids during his nine-month tenure. In all other respects, Defendant concedes that Plaintiff performed his responsibilities in a "satisfactory and competent manner" and "found him to be dedicated and a conscientious employee . . . ." (Doc. No. 15 ¶¶ 36-37.) Mr. Miller sold about thirteen hearing aids during the same period.

Ms. McKelvey was responsible for all hiring, training, and supervising of sales in both of Defendant's territories. In September 2001, Defendant promoted Jack Williams to Vice President, so that he could assume responsibility for these duties in Defendant's Western Territory. This promotion reduced Ms. McKelvey's travel time and allowed her to focus on the Eastern Territory. Mr. William's promotion also made the position of Services Manager unnecessary in both territories. Accordingly, in December 2001, Defendant eliminated the Services Manager position and terminated Plaintiff and Mr. Miller.

Defendant claims that after being terminated, Mr. Miller asked Mr. Williams if he could be rehired as a Sales Consultant. Plaintiff claims that Mr. Miller was merely transferred into the sales department and only Plaintiff was actually terminated. Regardless, both parties agree that

Mr. Miller took a position in the sales department immediately after the Services Manager position was eliminated. It is also undisputed that Plaintiff did not ask to be transferred or rehired into a different position upon receiving notice of termination.

Despite having made contacts within Defendant, around January 2002, Plaintiff claims to have applied for a Sales Consultant position with Defendant by faxing a resume to a number listed in a newspaper advertisement. Defendant claims to have never received this second resume and Plaintiff admits that he did not call his former employers to express interest in the position or otherwise follow up on the inquiry. In March 2002, Defendant hired Ms. Eshelman for the advertised position of Sales Consultant. Ms. Eshelman had worked as a hearing aid salesperson for eleven years prior to joining Defendant.

In April 2003, Defendant created the position of Operations Manager. This position is responsible for the hiring and training of clerical staff, and overseeing operations and compliance issues. Unlike the former Services Manager position, the Operations Manager does not perform any technical work on hearing aid units. It is undisputed that Plaintiff did not apply for this position.

On October 9, 2003, Plaintiff initiated the instant civil action. In his Amended Complaint, Plaintiff claims Defendant unlawfully discharged him in 1991 because of his race (Count I) and failed to hire him in 1992 as a Sales Consultant because of his race (Count II), both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 et seq. ("Title VII"). In Count III of his Amended Complaint, Plaintiff alleges race discrimination in violation of the Pennsylvania Human Relations Act ("PHRA").

**II.     Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). A factual dispute is material if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 249. The evidence presented must be viewed in the light most favorable to the non-moving party. Id. "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." Id.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, the non-moving party may not simply sit back and rest on the allegations in the complaint. Instead, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must examine the evidence of record in a light most favorable to non-moving Plaintiff and resolve all reasonable inferences in her favor. Stewart v. Rutgers, The State University, 120 F.3d 426, 431 (3d Cir. 1997). "This standard is applied with added rigor in

employment discrimination cases, where intent and credibility are crucial issues." Id. (quoting Robinson v. PPG Indus. Inc., 23 F.3d 1159, 1162 (7th Cir. 1994). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322.

### III. Discussion

#### A. Unlawful Termination

Plaintiff claims Defendant's decision to eliminate his position and its refusal to hire him as a Sales Consultant was motivated by discriminatory animus against African-Americans. Claims of employment discrimination based on race under Title VII and the PHRA are similarly evaluated in accordance with the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (applying the McDonnell Douglas analysis to PHRA claim); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (applying same analysis to Title VII claim). Pursuant to the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. Fuentes, 32 F.3d at 763.

In order to establish a prima facie case of discrimination involving a reduction in force, a plaintiff must show "that (1) [he] belonged to a protected class, (2) [he] was qualified for the position from which [he] was terminated, (3) [he] was terminated and (4) persons outside of the protected class were retained." Rhett v. Carnegie Ctr. Assocs. (In re Carnegie Ctr. Assocs.), 129 F.3d 290, 294-295 (3d Cir. 1997).

If a plaintiff presents a prima facie case of discrimination, the defendant must articulate

some legitimate, nondiscriminatory reason for its actions. Fuentes, 32 F.3d at 763. Finally, if the defendant articulates such a reason, the plaintiff must establish that the defendant's proffered reason for failing to hire him was pretextual. Id. Thus, if the plaintiff establishes a prima facie case of discrimination, and the defendant articulates a non-discriminatory reason for failing to hire him, the plaintiff may survive summary judgment only if he presents evidence from which a reasonable fact finder could either disbelieve the defendant's articulated legitimate reasons or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Id.

For purposes of this motion, Defendant concedes that Plaintiff meets the first three elements necessary to establish discriminatory discharge. (Doc. No. 14 at 12.) Rather, Defendant argues that Plaintiff cannot demonstrate the fourth element, that similarly situated individuals outside of Plaintiff's class were retained. Defendant points to evidence that both of the Services Managers were terminated, including Mr. Miller, a white male. (Doc. No. 15 ¶ 48.) In response, Plaintiff argues that Miller was not actually terminated when Defendant eliminated the Services Manager position. Rather, Plaintiff alleges, Miller was merely transferred to the sales division, whereas Plaintiff was not. (Doc. No.16 at 10.) Defendant counters with evidence that Mr. Miller affirmatively applied to the Sales Consultant position, after being terminated, and was not merely retained. This evidence is contradicted by Plaintiff's deposition, wherein Plaintiff testified that both Ms. McKelvey and Mr. Miller told him that McKelvey offered Miller the Sales Consultant position without Miller asking to be rehired, in essence transferring Miller

from one position within the company to another.[2] (Doc. No. 14, Ex. B at 149-150.) Accordingly, a genuine issue of material fact exists regarding whether Mr. Miller requested the sales position or was merely transferred to sales after his customer service position had been terminated. A reasonable jury could find that Defendant terminated everyone in Plaintiff's position, regardless of race, but Mr. Miller took affirmative steps to reapply to Defendant for another job. If a jury so finds, Plaintiff cannot establish a prima facia case of unlawful termination based upon the record before this Court. However, a reasonable jury could also find that Defendant terminated Plaintiff, but retained similarly situated Mr. Miller by transferring him into sales. Accordingly, construing all facts in a light most favorable to non-moving Plaintiff, the Court will assume for purposes of this Order that Plaintiff can establish a prima facia case of discrimination involving a reduction in force and will proceed with the McDonnell Douglas analysis.

Defendant advances a legitimate non-discriminatory reason for Plaintiff termination – that after the Vice Presidents began to assume the Services Manager duties, the Services Manager positions became redundant, thus necessitating the termination of Plaintiff and Miller. (Doc. No. 15 ¶¶ 38-44.) To avoid summary judgment in a Title VII action after the employer has proffered a legitimate nondiscriminatory reason for an adverse employment action, Plaintiff must produce evidence which: (1) casts sufficient doubt upon each proffered reason so that a fact

---

[2] Although Plaintiff's recitation of Mr. Miller's statements may be inadmissable hearsay, Ms. McKelvey's statements, as president of Defendant at the time, fall within Federal Rule of Evidence 801(d)(2), admission by a party-opponent, and therefore may be considered on summary judgement. See also Philbin v. Trans Union Corp., 101 F.3d 957, 961 n.1 (3d Cir. 1996) (noting that a hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion).

finder could reasonably conclude that each reason was a fabrication; or (2) allows a fact finder to infer that discrimination was more likely than not a motivating or determinative cause of action. Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). It is not enough for Plaintiff to that Miller was retained and he was not. Nor can Plaintiff merely rest upon a showing that "the employer's decision was wrong or mistaken." Fuentes, 32 F.3d at 765. Rather, Plaintiff must highlight, by pointing to evidence on record, "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id. (citations omitted). An employee "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997).

      To meet his burden, Plaintiff offers undisputed evidence that at the time of his termination, Defendant experienced a record financial year. Plaintiff also points to the glowing reviews and recommendations that he received from Defendant. However, these facts are inapposite with Defendant's proffered business reason. Defendant contends that it eliminated the Services Manager positions because they were unneeded, not because it could not afford to keep the position or that Plaintiff was a poor employee.

      Plaintiff also points to the creation of the Operations Manager position soon after the elimination of the Services Manager position. Plaintiff contends that this new position is merely his old position renamed. Nothing in the record supports this contention. Rather, record evidence establishes that Services Managers performed maintenance and service on hearing aid units during check-up sessions with customers. The Operations Manager hired and trained

8

clerical staff, oversaw operations, and supervised compliance issues. The former is a technical position and the latter is administrative. The record contains no evidence that the two positions are similar, much less identical.

Plaintiff further points to Mr. Miller's previous termination as a Sales Consultant with Defendant. Plaintiff argues that Defendant's proffered reason for termination must be pretextual because no rational employer would have rehired Miller for a sales position after he failed to perform once before. As proof of this argument, Plaintiff notes that Miller was eventually terminated from the sales position for again failing to meet the required sales quota. However, Plaintiff concedes that at no point during his tenure with Defendant did he ask to be reassigned to the sales department, nor did he inquire about such openings with Ms. McKelvey upon notification of his termination. (Conway Deposition at 108, 151.) It is not enough that Defendant merely chose to reassign Mr Miller and not Plaintiff.[3] As the Third Circuit has explained, "'[t]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'" Keller, 130 F.3d at 1109 (quoting Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996)). Defendant's choice to retain an employee who had prior sales experience with the company over another employee who did not is a business decision that does not, in and of itself, indicate racial animus. Although such a fact may be enough to establish a prima facia case of discrimination, it does not alone support a finding that Defendant's proffered reason for termination or infer that race was a factor in the decision. See Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1998) (holding that "a

---

[3] Assuming arguendo that Defendant transferred Miller to the sales department without Miller affirmatively asking for this reassignment.

pattern, in which blacks sometimes do better than whites and sometimes do worse, being random with respect to race, is not evidence of racial discrimination. . . . [T]o hold otherwise would be to permit the inference of discrimination anytime a single member of a non-protected group was allegedly treated more favorably than one member of the protected group, regardless of how many other members of the non-protected group were treated equally or less favorably") (internal quotation omitted).

Plaintiff further attempts to rebut indirectly Defendant's proffered reason for termination by listing an assortment of alleged discriminatory treatment. Plaintiff notes that Defendant paid for a portion of Mr. Miller's cellular phone bill but did not pay any portion of his beeper bill. However, it is uncontested that Defendant did not have a policy of paying for employee phones, that Miller requested Defendant pay a portion of his bill due to the large number of customer calls that he received on his private number, and that Plaintiff never asked for similar treatment with regard to his beeper. (Conway's Deposition at 106-07.) Plaintiff alleges that Miller was given a better company car, but concedes that "Spencer [Miller] was there longer than me, he deserved the [nicer] car." Id. at 148. Plaintiff alleges that he was unfairly docked pay for time off, but concedes that Defendant reimbursed him the money immediately upon complaint. Id. at 115-17. Plaintiff alleges that Defendant did not pay him commissions on some of the sales of hearing aids that he made during his tenure. Defendant counters that this failure to pay was a payroll oversight and points out that it paid the commissions immediately upon being informed of the mistake.[4] (McKelvey Deposition at 81.) Plaintiff contends that Defendant listed his

---

[4] Plaintiff's brief states that he filed a complaint with the PHRC in "October 2002" (Doc. No. 16 at 4) and received the back pay from Defendant by October 18, 2002 (Doc No. 16, Ex. E). Plaintiff does not state whether he complained to Defendant informally prior to filing a complaint

beeper number in an internal corporate directory of contact information, despite his requests to the contrary. However, Plaintiff fails to point to any other employee who was treated better in this regard or even how such a listing injured Plaintiff.

Plaintiff further alleges that he received study material only three weeks prior to a qualifications test, whereas white employees received the material "months in advance." (Doc. No. 16 at 3.) Plaintiff identifies two employees whom he states received study material earlier than he, Marleen Hoffman and a male employee named "Shane". (Conway Deposition at 66.) Plaintiff also points to the testimony of John Straw, a Sales Consultant, who testified at deposition that individuals hired for the sales position received study material "right away". (Straw Deposition at 32.) Plaintiff does not indicate whether Mr. Miller received the study material early or at all, or whether Services Managers routinely received the same study aids as Sales Consultants. Moreover, Ms. Hoffman's undisputed testimony for the reason she received the materials early is that she had to buy the study books herself and was not reimbursed by Defendant for this expense, unlike Plaintiff. Viewed in the most favorable light, this dispute goes only to whether Sales Consultants were treated more favorable with respect to a particular test than the Services Mangers; it does not speak to Defendant's proffered legitimate reason for termination.

The above amalgamation of isolated facts do not individually or collectively form a basis upon which a reasonable jury could find that racial animosity was the true or more likely reason for Plaintiff's termination. A genuine issue of material fact on this claim is not established by mere recitation of a random collection of workplace events that were neither pervasive nor

---

with the PHRC.

repetitive nor in any way demonstrative of racial animus or even malice against Plaintiff. As a sister court opined in a comparable matter, although "plaintiff is entitled to every favorable inference, he is not entitled to build a case on the gossamer threads of whimsey, speculation and conjecture." Keller v. Bluemle, 571 F. Supp. 364, 371 (E.D. Pa. 1983)(internal quotations omitted). This Court finds nothing in the record that would enable a reasonable juror to disbelieve Defendant's proffered reason for termination or find it so unworthy of credence as to allow the inference that race was a motivating factor for Defendant's action. Because Plaintiff has failed to offer any evidence of pretext to rebut Defendant's proffered reason for his termination, these claims will be dismissed.[5]

### B.     Unlawful Refusal to Hire

Claims of discriminatory refusal to hire are also evaluated under the burden-shifting framework set forth in McDonnell Douglas. In order to prove a prima facie case, Plaintiff must demonstrate that: (1) he belongs to a racial minority; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. McDonnell Douglas, 411 U.S. at 802. Once the plaintiff presents a prima facie case, the burden of production shifts to the employer to come forward with legitimate, nondiscriminatory reasons for its actions. If the employer meets this burden, the burden of production then shifts back to the plaintiff to show that the employer's

---

[5] As claims of employment discrimination under Title VII and the PHRA are similarly evaluated in accordance with the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), both claims will be dismissed. See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002)

proffered nondiscriminatory reasons are pretextual.

Plaintiff asserts that he faxed a resume to Defendant for the Carlisle Sales Consultant position in early 2002. Plaintiff concedes that he did not indicate his desire to apply for a Sales Consultant position when he discussed his termination with Ms. McKelvey, nor did he follow up with Defendant when his fax went unanswered. Defendant contends that it never received Plaintiff's resume or cover letter seeking the sales position. Moreover, Defendant argues that even if it had received Plaintiff's fax, it still would have hired Ms. Eshelman over Plaintiff because she had ten years more experience in selling hearing aids.

Even assuming, <u>arguendo</u>, that Plaintiff can make a <u>prima facie</u> case, he nevertheless fails to rebut Defendant's legitimate non-discriminatory reason why it did not hire him for the position. To demonstrate pretext, Plaintiff points to the fact that the majority of Defendant's customers are white and none of their sales representative are black. This, Plaintiff argues, is because Defendant intentionally refuses to hire African-American salespersons, apparently in fear that it would offend their Caucasian customers. This argument ignores the fact that Defendant hired Plaintiff, knowing full well his race, to fit and service hearing aids, conduct check-ups, and provide customer service for its customers.[6] Plaintiff offers no other examples of African-Americans being rejected for positions with Defendant. Plaintiff points to no statistical evidence that the location and size of Defendant makes an absence of African-Americans highly improbable without racial animus factoring in the employment decisions. Plaintiff points to no

---

[6] The Court does not suggest that the one time hiring of a minority worker immunizes a company from discrimination claims. However, the mere absence of African-American workers in Defendant's sales department does not, by itself, allow for the inference of discrimination without some showing that racial motives artificially preserves this demographic.

examples of his race being discussed or referenced at work during his tenure. Plaintiff points to no specific examples of racial animus or racial epithets. In fact, the record is devoid of any serious disagreements or hard feelings arising between Plaintiff and another employee. There is nothing on record to suggest that race factored into any of Defendant's employment decisions, beyond Plaintiff's own vague impression that racial animus must have been the motivating element for his failure to secure a sales position. This is not enough to meet Plaintiff's burden under <u>McDonnell Douglas</u>. Even if a fact finder accepted Plaintiff's testimony that he faxed his resume to the correct number in early 2002, based upon the record before this Court, no jury could reasonably conclude or infer that race factored into Defendant's decision to hire Ms. Eshelman over Plaintiff. Accordingly, Defendant's motion for summary judgment must be granted and Plaintiff claims will be dismissed.

**IV.**     **Order**

**AND NOW**, this 28th day of November, 2005, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 13), and the responses thereto, **IT IS HEREBY ORDERED THAT** the motion is **GRANTED**.  Plaintiff's Complaint (Doc. No. 1) is **DISMISSED**.  The Clerk of Court is directed to close the file.


                                                                              S/ Yvette Kane
                                                                              Yvette Kane
                                                                              United States District Judge

Date: November 28, 2005